**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| WENDY BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-14-DWD |
| | ) | |
| FEDEX SUPPLY CHAIN, INC., and | ) | |
| THEODORE SINGLETON, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

On November 7, 2018, Plaintiff Wendy Brooks filed this discrimination lawsuit against Defendants FedEx Supply Chain, Inc. ("FedEx") and Theodore Singleton ("Singleton") in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois (Doc. 1-1, p. 1).  Plaintiff alleges violations under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq ("Title VII"), and the Illinois Human Rights Act, 775 ILCS 5/1-101, et. seq ("IHRA") (Doc 1-1).  Defendant FedEx timely removed the case to this Court on January 4, 2019 (Doc. 1).

Plaintiff originally brought four claims against Defendant FedEex for sexual harassment/hostile work environment and gender discrimination in violation of Title VII, along with related retaliation claims for reporting the alleged harassment and discrimination (Doc. 1-1).  On April 18, 2019, this Court dismissed Plaintiff's claims for gender discrimination and retaliation for reporting gender discrimination (Doc. 28).

Therefore, only two claims remain against FedEx: Count I for sexual harassment/hostile work environment and Count II for retaliation for reporting sexual harassment/hostile work environment (Doc. 28).  Plaintiff also proceeds on three counts against Singleton: Count V for sexual harassment/hostile work environment in violation of the IHRA; Count VI for retaliation for reporting sexual harassment/hostile work environment in violation of the IHRA, and Count VII for intentional infliction of emotional distress (Doc. 1-1; Doc. 28).

Now before the Court is the motion for summary judgment filed by Defendant FedEx (Doc. 86) and memorandum in support (Doc. 87).  Plaintiff timely opposed the motion (Docs. 97, 98), and FedEx replied (Doc. 99).  Defendant Singleton also filed a *pro se* response to the motion for summary judgment (Doc. 96) and asked the Court to dismiss the three claims against him.  Plaintiff did not specifically respond to Singleton's motion.  For the reasons detailed below, Defendant FedEx's motion for summary judgment will be granted.  Defendant Singleton's motion to dismiss will be denied.

## BACKGROUND

The following facts are not genuinely disputed.  On June 24, 2013, FedEx hired Plaintiff as a full-time Sanitation Teammate in Edwardsville, Illinois (Doc. 97, p. 1). Plaintiff has worked continuously for FedEx since 2013 and is still employed with FedEx (Doc. 97, p. 2).  As a Sanitation Teammate, Plaintiff earned $16.49 per hour (Doc. 97, p. 1). Brooks was promoted to a Lift Truck Operator in September 2019 and received a pay increase to $17.25 per hour (Doc. 97, p. 2).

Defendant Singleton also worked at FedEx as a "Lead" hourly teammate (Doc. 97, p. 3). Singleton's position served as a liaison between management and hourly employees (*Id.*). Singleton left his employment with FedEx in February 2018 (Doc. 87-6, p. 2). According to Plaintiff's deposition testimony, Singleton was never her supervisor, and did not have the ability to hire, fire, or independently discipline Brooks (Doc. 87-4, pp. 17, 64). However, Singleton assisted with training some employees, was able to delegate certain work to employees, including Plaintiff, and Singleton could perform "PCOs" which are similar to safety checks (Doc. 87-4, p. 64; Doc. 87-6, pp. 3, 21-25). Plaintiff and Singleton, along with other FedEx teammates generally joked around with each other (Doc. 97, p. 5; Doc. 87-4, p. 67).

<u>**Harassment Allegations against Singleton**</u>

Plaintiff maintains that she was sexually harassed by Defendant Singleton (Doc. 87-4, p. 16). Between 2016 and 2017, Plaintiff alleges that Singleton made multiple inappropriate comments to her and engaged in unwanted and inappropriate physical touching of Brooks (Doc. 97, p. 4). Plaintiff also alleges two separate isolated incidents involving Singleton. The first occurred in 2016, when Defendant Singleton allegedly showed Plaintiff a picture of his penis when he was selling DVDs (Doc. 97, p. 4) ("the DVD picture incident"). The second incident occurred in April 2017, when Defendant Singleton performed a "hip thrust" approximately 40 feet away from Plaintiff in the FedEx warehouse when Plaintiff was riding on the back of a supervisor cart (Doc. 87-4, p. 7; Doc. 97, pp. 5-6) ("the hip thrusting incident"). Singleton denies Plaintiff's allegations and testified that he never inappropriately touched Plaintiff (Doc. 87-6, p. 49,

3

16).  Singleton also testified that he did not make inappropriate comments to Plaintiff, and further disputes Plaintiff's narratives of both the "DVD picture incident" and the "hip thrusting incident."  (*Id.*).

April 2017 Investigation of the "Hip Thrusting Incident"

FedEx maintains written policies, provides training, and avenues to report sexual harassment (Doc. 97, p. 1).  Plaintiff did not report every complaint she had of Singleton's alleged inappropriate actions and comments to Human Resources (Doc. 97, pp. 4-5; Doc. 87-4, p. 106).  Plaintiff did not originally report the 2016 "DVD picture incident" to Human Resources in 2016 (Doc. 97, p. 8).  However, on April 21, 2017, Plaintiff reported the "hip thrusting incident" to her weekend shift supervisor, Kirk Stoner (Doc. 97, pp. 56).  Stoner advised Plaintiff to submit a written statement to Human Resources (Doc. 97, p. 6).  Stoner turned Plaintiff's written statement into Human Resources (Doc. 87-5, pp. 5-6).  Plaintiff's then fiancé, and FedEx co-worker, James DeMoro, also called the corporate Human Resources line to report the "hip thrusting incident" (Doc. 97, pp. 6-7).  After Plaintiff reported the "hip thrusting incident," Singleton asked Plaintiff if he was in trouble, to which Plaintiff replied "no, but you are because you got busted!"  (*Id.*).

FedEx's Human Resources Manager, Linda Sandbach, investigated the "hip thrusting incident" and interviewed Plaintiff, DeMoro, Singleton, and their co-worker William Tegtmeier (Doc. 97, pp. 6-7).  Plaintiff testified that Singleton made a sexual hip thrusting move directed at Plaintiff (Doc. 87-4, pp. 7-8).  Singleton testified that his gesture was akin to a football stance or squat, intended to mimic Plaintiff's position as she was seated at the time (Doc. 87-6, pp. 4-5).  Upon completion of Sandbach's investigation, she

4

determined that Plaintiff's complaint was unsubstantiated because the witnesses had "different perceptions of the type of gestures" Singleton made (Doc. 97, p. 7). Singleton, however, was issued a verbal counseling and was required to review FedEx's Anti-Harassment and Anti-Discrimination and Acceptable Conduct policies, and to attend a course titled "Preventing Harassment in the Workplace." (Doc. 97, p. 7). Singleton's counseling was issued on May 11, 2017 (Doc. 97, p. 7; Doc. 87-6, pp. 12-13).

<u>April-July 2017 Plaintiff Works in the Welcome Center</u>

In or about April 2017, and after Plaintiff filed her complaint of the "hip thrusting incident," Plaintiff was transferred to FedEx's Welcome Center for a training opportunity (Doc. 97, pp. 13-14). FedEx maintains that this position was only temporary and was to provide Plaintiff with a training opportunity so she could apply for a permanent pick clerk position in the future (Doc. 97, pp. 13-14). However, Plaintiff testified that she was not originally aware that this position was temporary, but believed she was transferred to undergo training for a permanent pick clerk position (Doc. 97, p. 14; Doc. 87-4, pp. 150-152, 154). Plaintiff returned to her position in the warehouse in late June or early July of 2017 (Doc.87-4, p. 154). After returning to the warehouse, Plaintiff testified that she tried to apply for a pick clerk position, however, FedEx has no record of Brooks applying for a position. (Doc. 97, p. 15). Plaintiff testified that she expressed interest in open positions to Sandbach and Marsoun (*Id.*). On one occasion, Plaintiff claims that Marsoun threw her application in the trash (Doc. 97, p. 15). Plaintiff also testified that she did not follow up with Sandbach or Marsoun about the open positions (Doc. 87-4, pp. 154, 160-166). Plaintiff did not apply for any other positions in 2017 or 2018 (Doc. 97, p. 16). However,

Plaintiff was promoted to a Lift Truck Operator in September 2019 and continues to work for FedEx in this position (Doc. 97, pp. 2, 16-17).

### June-July 2017 Investigation of the "DVD Picture Incident"

In June or July 2017, Human Resources first learned of Plaintiff's allegations concerning the 2016 "DVD picture incident."   (Doc. 97, p. 8).   On June 15, 2017, a workplace altercation occurred between Plaintiff's then fiancé, DeMoro, and another coworker, Jason Wernsman (Doc. 97, p. 8).  Plaintiff also submitted a written statement about the altercation on July 8, 2017 (Doc. 97, p. 8).  In her written statement about the DeMoro/Wernsman altercation, Plaintiff alleged that "one or two years ago," Defendant Singleton was selling DVD movies and sent pictures of the movies to Plaintiff (Doc. 97, p. 8).  The pictures allegedly included one called "Anaconda," which Plaintiff maintains was a penis picture (Doc. 97, p. 8).

Plaintiff testified that Singleton sent the same picture to her coworkers, Angie Roberson and Sheila Gleason. However, both Roberson and Gleason denied that they had received inappropriate pictures from Singleton (Doc. 97, p. 9).  FedEx District Human Resources Manager Janeth Wolf investigated the "DVD picture incident" and interviewed 13 employees.  (Doc. 97, pp. 8-9).  Plaintiff was unable to provide FedEx with a copy of the alleged inappropriate picture because her phone was lost in a lake (Doc. 97, p. 9).  Wolf determined that Plaintiff's allegations were unsubstantiated (Doc. 97, p. 9). After July 2017, Plaintiff testified that Singleton only spoke to her in a professional manner regarding work related matters (Doc. 97, p. 9; Doc. 87-4, pp. 31-32).  Singleton left his employment with FedEx in February 2018 (Doc. 87-6, p. 2)

### Retaliation Allegations against Marsoun

Brooks alleges that her direct supervisor, Brian Marsoun, retaliated against her for reporting Singleton's sexual harassment (Doc. 97, pp. 11-12). Plaintiff testified that she had issues with Marsoun's leadership starting in 2015 or 2016, and before her complaints against Singleton (Doc. 97, p. 12). However, following her reports in 2017, Plaintiff claims Maruson began retaliating against her by issuing false verbal and written disciplinary reports, increasing Brooks' job duties (but not doing the same for others) and disregarding Brooks' applications for other positions (Doc. 97, pp. 11-13). Although Singleton was not a manager, Plaintiff speculates that Marsoun retaliated against her for complaining about Singleton because Singleton was "with the supervisors," (specifically, Brian Marsoun, Linda Sandbach, and Steve Perkins), which according to Plaintiff, meant that if she complained about one member of this group, the entire group would "frown on that" (Doc. 87-4, pp. 41-44).

On July 28, 2017, Marsoun issued Plaintiff a verbal counseling for failing to check the restroom prior to entry for cleaning (Doc. 97, pp. 11-12). Plaintiff denies the factual allegations leading to this verbal counseling (Doc. 87-4, pp. 41-45). Instead, Plaintiff claims that her coworker, Mary Strickland, falsely reported that she was in the bathroom before Plaintiff began cleaning, resulting in Plaintiff's disciplinary action (Doc. 97, pp. 1112; Doc. 97-1, pp. 17-20; Doc. 87-4, pp. 41-45). Plaintiff testified that she believed Strickland was aware of Plaintiff's complaints against Singleton, and as such, Strickland's attitude towards Plaintiff changed negatively leading Strickland to lie to Marsoun in order that Plaintiff would receive disciplinary action (Doc. 97, pp. 11-12; Doc. 97-1, pp.

17-20).  The July 28, 2017 discipline Plaintiff received from Marsoun did not impact Plaintiff's job in sanitation, although Plaintiff claims it influenced her promotion to other positions (Doc. 97, pp. 12-13).  Plaintiff, however, testified that she could not identify a specific position for which she applied for that was denied because of this disciplinary action (Doc. 97-1, p. 45).

From approximately September 27, 2018 through January 16, 2019, Brooks applied for and took approved FMLA leave (Doc. 97, p. 10).  Plaintiff claims she was terminated in approximately late 2018 while on approved FMLA leave (Doc. 97-1, pp. 42-44).  According to Plaintiff's testimony, she was out on FMLA in 2018, but having issues getting in touch with Marsoun about her leave and approval to come back to work (Doc. 97-1, p. 41; Doc. 87-4, p. 68).  When Plaintiff was waiting to hear from Marsoun, she received a call from Human Resources Manager Wolf, who informed Plaintiff that she was following-up with Plaintiff because Wolf had received paperwork for Plaintiff's termination and leave (Doc. 97-1, p. 43; Doc. 87-4, p. 68).  Plaintiff testified that as a result of her conversation with Wolf, she was not actually terminated, and instead her leave was extended and she could return to work after her leave ended (Doc. 97-1, pp. 43-44; Doc. 87-4, p. 68).

## EEOC and IDHR Charges

On August 9, 2017, Plaintiff filed charges with the United States Equal Employment Opportunity Commission ("EEOC") (EEOC No. 560-2017-01951), and the Illinois Department of Human Rights ("IDHR") (IDHR No. 2018SN0335) (Doc. 1-1, pp. 13, 17).  In her EEOC charge, Plaintiff alleged continuing discrimination, harassment, and

retaliation beginning from April 2017 (Doc. 1-1, pp. 13-14).  More specifically, Plaintiff alleged, that while she was employed with FedEx, she was subjected to numerous sexual harassment and hostile work environment incidents, including physical touching by "Theodore Hamilton", and that after reporting this harassment and discrimination, she FedEx retaliated against her (*Id.*).  The EEOC issued a right to sue letter on August 13, 2018, stating that after its investigation, the EEOC was unable to conclude that the charge established statutory violations (Doc. 1-1, p. 15).

The IDHR issued its Notice of Substantial Evidence and Notice of Dismissal of Plaintiff's charge on August 8, 2018 (Doc. 1-1, p. 22).  IDHR found substantial evidence of Plaintiff's claims for sexual harassment but found that it lacked jurisdiction to review Plaintiff's claims for retaliation and intentional interference with economic relationship, assault, and battery (Doc. 1-1, p. 28).  During the IDHR investigation, Plaintiff described both sexual comments and physical touching incidents that occurred from January 2017 through July 20, 2017 (Doc. 1-1, p. 29).  Plaintiff alleged that Singleton "squeezed by her" with the front of his full body against the front of her body, and touched her breasts in December 2016 (Doc. 1-1, p. 29).   Plaintiff alleged that Singleton would make sexual comments to her, such as "Oh, don't be bending over like that" when Singleton was bent over cleaning (Doc. 1-1, p. 29).  Plaintiff claimed that Singleton made these comments approximately twice a week from January 2016 through April 2017 (Doc. 1-1, p. 29). Plaintiff also alleged that Singleton "slapped her on the ass" in February 2017 and thrusted his pelvis at her in April 2017 (Doc. 1-1, p. 29).  Brooks' deposition testimony elaborates on these incidents (Doc. 87-4, pp. 38-40).

9

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).  Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer "specific facts showing that there is a genuine issue of fact for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). To establish a genuine issue of material fact, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts."  *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313, 1317 (7th Cir. 1995).  However, no issue remains for trial unless there is "sufficient evidence favoring the non-moving party" for a jury to return a verdict for that party. *See Faas v. Sears, Robuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd.*, 71 F.3d at 1317.  If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)  In sum, if a claim or defense

is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

Finally, at the summary judgment stage it is not the Court's role to "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (citing *Waldridge v. Amer'n Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *see also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (courts are not required to scour the record looking for factual disputes or piece together appropriate arguments). Instead, the Court "is only tasked with deciding whether, based on the evidence of record, there is any material dispute of fact that requires a trial." *Buell*, 796 F.3d at 756.

## DISCUSSION

Title VII "makes it an unlawful employment practice by an employer to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (internal quotations omitted). A Title VII discrimination claim requires a showing that an adverse employment action was motivated by discriminatory animus. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). The statute also forbids employers from retaliating against employees for complaining about prohibited discrimination. *Boss*, 816 F.3d at 916.

### Count I: Sexual Harassment/Hostile Work Environment against FedEx

Sexual harassment is a form of discrimination that Title VII prohibits. *Meritor Sav. Bank, FSB*, 477 U.S. at 65-66. To establish a prima facie case of sexual harassment under Title VII, Plaintiff "must show that 1) she was subjected to unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007); *Moser v. Indiana Dep't. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005). The Seventh Circuit considers hostile environment claims "under a 'totality of the circumstances'" approach. *Boss*, 816 F.3d at 920 (citing *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) and *Hall v. City of Chicago*, 713 F.3d 325, 331 (7th Cir. 2013) ("courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive.")).

The record before the Court is far from conclusive as to the first two elements, but by reviewing the record in the light most favorable to Plaintiff, and by taking all reasonable inferences in her favor, the Court finds that there are triable issues of material fact as to the first two elements. The parties further dispute the third and fourth prongs – whether Singleton's actions created a hostile work environment, and whether there is any basis to impute employer liability.

### Severity of Singleton's Actions/Hostile Work Environment

FedEx argues that Singleton's actions (assuming they occurred and were subjectively offensive to Plaintiff) could not have created a hostile work environment

because they were not objectively offensive.  The Court disagrees.  To demonstrate a hostile work atmosphere, Plaintiff must establish that Singleton's behavior was both objectively and subjectively offensive. *See Boumehdi*, 489 F.3d at 788.  Plaintiff's complaints provided sufficient evidence that she was subjectively offended by Singleton's actions; accordingly, construing all reasonable inferences in Plaintiff's favor, a reasonable jury could find that Plaintiff perceived her environment as hostile.  *Boumehdi*, 489 F.3d at 788 (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000) recognizing that a jury reasonably could find, based on an employee's complaints to a superior, that the employee perceived her environment as hostile)).

> As for the objective element, courts:
>
> look to several factors to determine whether alleged harassment was objectively offensive, including the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance.  The 'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable.

*Boumehdi*, 489 F.3d at 788 (citing *Bakersville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 2007)).  FedEx argues that Singleton's alleged conduct is not objectively offense because Brooks limited her complaints against him to only the 2016 "DVD picture incident" and he 2017 "hip thrusting incident," but never sufficiently complained about any other incidents to FedEx  Indeed, Plaintiff confirmed in her deposition that she did not actually report every complaint she had of Singleton to FedEx (Doc. 87-4, p. 106), and the first complaint Plaintiff made to FedEx was in April 2017 (Doc. 87-4, p. 25).

However, the record currently before the Court indicates that Brooks alleged ongoing sexual comments and physical touching incidents with Singleton from approximately December 2016 through July 20, 2017 (Doc. 1-1; Doc. 87-4, pp. 24, 37-39). It is appropriate for the Court to consider harassing incidents that occur outside the EEOC limitations period as long as one harassing incident occurred within the period. *Bannon v. Univ. of Chicago*, 503 F.3d 623, 629 (7th Cir. 2007). In her EEOC charge, and the IDHR investigation report, Brooks described both sexual comments and physical touching incidents that occurred from January 2017 through July 20, 2017 (Doc. 1-1, p. 29). Such alleged incidents included Singleton "squeeze[ing] by her" with the front of his full body against the front of her body, and touching her breasts in December 2016; making sexual comments, such as "oh, don't be bending over like that" when Singleton was bent over cleaning approximately twice a week from January 2016 through April 2017; and Singleton "slapp[ing] her on the ass" in February 2017 (Doc. 1-1, p. 29). Plaintiff also described the April 2017 "hip thrusting incident" (Doc. 1-1-, p. 29). It is appropriate for the Court to consider these statements as relevant here, *see Boss*, 816 F.3d at 914-15, and Plaintiff's testimony in her deposition further elaborates on these incidents (Doc. 87-4, pp. 38-40).

While Defendant Singleton denies that he made inappropriate comments or inappropriately touched Plaintiff (Doc. 87-6, p. 4-9, 16) and FedEx argues that these incidents are not objectively offense, at the summary judgment stage it is not the Court's role to "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Buell*, 796 F.3d at 756 (internal citations omitted). Instead, the Court

14

"is only tasked with deciding whether, based on the evidence of record, there is any material dispute of fact that requires a trial." *Id.* Plaintiff alleged that she received unwelcomed sexual comments approximately twice a week for a period of 16 months (Doc. 1-1, p. 29), and testified to a handful of incidents of unwanted physical touching in her deposition, including incidents where Singleton touched her breast and "ass" (Doc. 87-4, pp. 38-39).

A reasonable jury could therefore conclude from Plaintiff's testimony that Singleton's conduct– both the frequency of alleged sexual comments, and the severity of the alleged touching – was pervasive enough to create a hostile work environment. *See Boumehdi*, 489 F.3d at 789 (concluding that a jury could find plaintiff's allegations that defendant made 18 sexist or sexual comments in less than a year's time was pervasive enough to create a hostile work environment); *see also McPherson v. City of Waukegan*, 379 F.3d 430 (7th Cir. 2004) (physical assault creates an objectively hostile work environment). Accordingly, construing all inferences in Plaintiff's favor, the Court finds that there are material facts in dispute concerning whether Singleton's comments and actions occurred and with what frequency, and whether such comments and actions created a hostile work environment.

<u>Employer Liability</u>

Plaintiff, however, must still demonstrate a basis for employer liability for Singleton's actions. An employer's liability "depends upon whether the harasser is the victim's supervisor or merely a co-employee." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). When a supervisor is the harasser, the employer is

generally vicariously liable for the hostile environment. *Id.* "Because employers do not entrust mere co-employees with any significant authority with which they might harass a victim, employers are liable for a co-employee's harassment only when they have been negligent either in discovering or remedying the harassment." *Id.* (internal quotations and citations omitted).

The parties dispute whether Singleton was Plaintiff's supervisor or coworker. Plaintiff admits that Singleton was not her direct supervisor and did not have the authority to hire or fire her (Doc. 97, p. 5; Doc. 87-4, pp.17, 64). However, Plaintiff testified that Singleton's position as a "lead" provided him with some supervisory duties over her, including that he was able to direct Plaintiff to do certain tasks, and could request that Plaintiff's supervisors discipline her (Doc. 97-1, pp. 39-40). Further, Brooks testified that Singleton was "in" with the management group such that he effectively had some level of influence over Plaintiff's direct supervisors, and specifically Marsoun (Doc. 87-4, pp. 41-44). FedEx maintains that Singleton had no independent authority over Brooks and was simply her coworker.

"Supervisor" under Title VII is "a term of art that denotes more than an individual with a higher rank, a superior title, or some oversight duties. Rather, a supervisor for purposes of Title VII must have the power to directly affect the terms and conditions of the plaintiff's employment. Thus, a supervisor will generally have the authority to hire, promote, demote, discipline or transfer a plaintiff." *Jaheh v. City. Of Cook*, 678 F.3d 560, 568 (7th Cir. 2012) (internal citations and quotations omitted). The Supreme Court defines supervisors under Title VII as those who are "empowered . . . to take tangible

16

employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013) (rejecting "nebulous" or colloquial definitions of "supervisor"); *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017); *Jaheh*, 678 F.3d at 568.

The Seventh Circuit has further "noted that not all individuals fit cleanly within 'the two pigeonholes' of paradigmatic supervisor and paradigmatic coworker," however, an individual's "occasional authority to oversee some aspects of [another's] work does not suffice to make [them] a supervisor." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010). Accordingly, the ability to direct Plaintiff's day-to-day activities is not enough, standing alone, to make Singleton a supervisor under Title VII. *Id.* Instead, the Seventh Circuit has held that "more extensive duties—such as the combination of directing or managing a plaintiff's activities, providing evaluation input to a plaintiff's supervisor, and training a plaintiff—do not necessarily suffice." *Id.*

In *Doe v. Oberweis Dairy*, 456 F.3d 704, 716-17 (7th Cir. 2006) (decided before *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013)), the Seventh Circuit described an instance where an employee with no authority to fire another could be considered a supervisor for Title VII purposes. Indeed, in *Doe*, the employee had some supervisory duties and some disciplinary authority, but no ability to fire another employee. *Id.* at 716-17. However, the Seventh Circuit likened him to a supervisor because he was often the only supervisory employee present in the workspace, and the actual supervisor/boss would have taken

17

the supervising employee's word over the other employees, rather than conducting an investigation into any complaints. *Id.*

Brooks concedes that Singleton was not her supervisor and did not have the power to hire or fire her (Doc. 97, p. 3; Doc. 87-4, p. 4). Plaintiff's further allegations that Singleton had some supervisory roles over her, and perhaps unofficial influence over her actual supervisors and the rest of the management team, simply do not suffice so to make Singleton a supervisor under Title VII, and no reasonably jury could find otherwise. Indeed, other than Plaintiff's conclusory allegations, nothing in the record indicated that Singleton could discipline Plaintiff, and even if he was authorized to request disciplinary actions, Plaintiff has not presented any evidence in the record to suggest that FedEx or one of Plaintiff's actual supervisors would have taken Singleton's word over hers and disciplined Plaintiff without first conducting an investigation into her complaints. And, significantly, Plaintiff has failed to come forward with any evidence that Singleton had the power to directly affect the terms and conditions of the plaintiff's employment. As a result, the Court finds that Singleton was Plaintiff's co-worker and not her "supervisor".

Therefore, whether FedEx has employer liability here turns on whether FedEx was "negligent either in discovering or remedying the harassment." *Parkins*, 163 F.3d 1032; *see also Tyburski*, 964 F.3d at 602 ("[I]f the harassing employee is a coworker rather than a supervisor, 'the employer is liable only if it was negligent in controlling working conditions'"). An employer may be negligent in failing to prevent harassment from taking place, such as not monitoring the workplace, failing to respond to complaints,

18

failing to provide a system for complaints, or effectively discouraging complaints. *Vance*, 570 U.S. at 448-49.  Further, employers are not generally considered to be "apprised of the harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Jajeh v. Cty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012).  Then "[o]nce an employer is aware of workplace harassment, it can avoid liability by taking 'prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.* (quoting *Vance*, 570 U.S. at 471).

Here, Plaintiff has failed to put forth evidence of negligence on the part of FedEx. Instead, the evidence in the record indicates that Brooks did not make a concerted effort to inform FedEx of any issues with Singleton other than the "hip thrusting incident" when Plaintiff made her first complaint to FedEx in April 2017, despite FedEx having policies and practices in place for Plaintiff to report harassment.  Then, once Plaintiff submitted her first complaint about the "hip thrusting incident" to FedEx in April 2017, FedEx took prompt action to investigate her claims and to discipline Singleton.

Similarly, although Plaintiff did not actually inform FedEx of the "DVD picture incident", when FedEx subsequently learned of the incident from Plaintiff in July 2017, FedEx again took prompt action to investigate Plaintiff's claims. Further, after these investigations, Plaintiff admitted that Singleton's actions stopped after the investigations in July 2017.  Accordingly, FedEx was not negligent in discovery or remedying Singleton's alleged harassment.  Plaintiff has therefore failed to demonstrate a material fact so that a reasonable jury could conclude that there is a basis for employer liability against FedEx

for Singleton's actions.   As such, Defendant FedEx's motion for summary judgment directed at Count I of Plaintiff's complaint will be granted.

### Count II: Retaliation for Reporting Sexual Harassment/Hostile Work Environment against FedEx

Title VII further prohibits employers from discriminating against employees who oppose prohibited employment practices. *Boumehdi*, 489 F.3d 792.   "An employee can prove retaliation using either the direct or indirect method of proof." *Id.* "Under the direct method, a plaintiff can prove retaliation by presenting direct evidence of 1) a statutorily protected activity; 2) an adverse action taken by the employer; and 3) a causal connection between the two. *Id.* (citing *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir.2003)).   Under the direct method, "a plaintiff may [also] offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994)).

Plaintiff proceeds under the direct method of proof.   Here, Plaintiff offered evidence that she complained of Singleton's harassment in April 2017 and July 2017 and that her direct supervisors knew of these complaints.   These complaints qualify as protective activity.   Plaintiff then argues that after reporting Singleton, Plaintiff's direct supervisor, Marsoun, retaliated against her for filing these complaints by taking certain adverse actions against her.   Plaintiff also briefly argues that Marsoun, himself, was sexually harassing or discriminating against Plaintiff.   However, as this Court has already

found in its Order dismissing Plaintiff's gender discrimination and related retaliation claims, Plaintiff's claims in this matter are related only to the harassment actions taken by and related to Defendant Singleton (Doc. 28). Further, Plaintiff's deposition testimony does not support her allegations of sexual harassment claims against Maruson, because she explicitly testified that she was only asserting sexual harassment claims against Singleton (Doc. 87-4, p. 16).

Accordingly, to succeed on her retaliation claim, Plaintiff must demonstrate that the alleged retaliatory actions taken by Marsoun were adverse employment actions, and that those actions had some causal relationship to her reports of discrimination against Singleton. Plaintiff claims she suffered at least three adverse employment actions: when Marsoun took disciplinary actions, including the disciplinary report against her in July 2017; when Marsoun allegedly threw Plaintiff's application for the pick clerk position away; and when Marsoun allegedly terminated Plaintiff while she was on FMLA leave. However, the facts in the record do not support a finding that any of these actions amounted to adverse employment actions. For purposes of Title VII, an adverse employment action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bell v. E.P.A.*, 232 F.3d 546, 554 (7th Cir. 2000) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)). The action must be "materially adverse", not merely an "inconvenience or an alteration of job responsibilities." *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002); s*ee also*

*Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action.").

Plaintiff has not offered evidence that any of the alleged actions Marsoun took were adverse employment actions.   Indeed, Plaintiff testified that she had issues with Marsoun's leadership since approximately 2015 or 2016 (Doc. 87-4, p. 17).  As for the disciplinary reports, even assuming that Marsoun issued her multiple verbal and written warnings in addition to the July 2017 disciplinary report[1], Plaintiff conceded that these disciplinary reports did not impact her sanitation job, and she was not denied any promotions based on these reports (Doc. 87-4, pp. 14-16).  Plaintiff's further claims that Marsoun threw her pick clerk application away are also disputed.   However, even construing the facts in Plaintiff's favor and assuming that Marsoun did throw Plaintiff's job application away, Plaintiff has not provided any evidence that she otherwise attempted to apply for the pick clerk position.  Indeed, Plaintiff testified that she did not follow up with Sandbach about the position, and Plaintiff offered no evidence that she resubmitted  the application after finding it in the trash bin, or that she was qualified for the open position (Doc. 87-4, pp. 52-54).

Regarding Plaintiff's alleged "termination" in 2018 while on FMLA leave, she concedes that she was not actually terminated and received all of her allotted leave time. Moreover, the alleged termination occurred in approximately December 2018, nearly 18

---

[1] FedEx disputes that Plaintiff was issued any verbal or written warnings other than the July 2017 disciplinary report because they were not contained in Plaintiff's employment file.  However, the employment file was not submitted in the record before the Court

months from when she first reported her complaints against Singleton, and 10 months after Singleton left his employment with FedEx. Accordingly, Plaintiff failed to demonstrate a material fact so that a reasonable jury could conclude that she suffered an adverse employment action in connection to her reporting her claims against Singleton.

Even if Plaintiff did suffer an adverse employment action, she has not presented any evidence that the alleged retaliatory actions taken by Marsoun were related to Plaintiff filing her harassment claim against Singleton. To establish a causal link of a retaliation claim, plaintiffs frequently show that "there was a suspiciously short period of time between the employee's complaint and the adverse employment action," or that there was some other inference to suggest discriminatory intent. *Boumehdi*, 489 F.3d at 493. Here, Plaintiff has simply provided no evidence that any of Marsoun's actions directly resulted from complaints against Singleton. While Plaintiff speculates that all of her coworkers and immediate supervisors were aware of her complaints against Singleton, she has failed to present any evidence connecting Marsoun's actions to her complaints against Singleton.

Plaintiff argues that Singleton was "in" with Marsoun, implying that he had influence over Marsoun's decisions. However, Plaintiff has offered nothing more than conclusory statements connecting Marsoun and Singleton. Indeed, Singleton testified that he did not ask Marsoun, or any other supervisor, to take disciplinary actions against Plaintiff (Doc. 87-6, pp. 22-23). Plaintiff does not refute this testimony. Accordingly, Plaintiff's speculation here is simply not enough to establish a causal link between Marsoun's actions and Plaintiff's complaints of Singleton's actions. As Plaintiff failed to

demonstrate a material fact so that a reasonable jury could conclude that she suffered an adverse employment action in connection to her reporting her claims against Singleton, Defendant FedEx is also entitled to summary judgment on Plaintiff's retaliation claim.

### Claims against Singleton

Plaintiff also proceeds on three counts against Singleton: Count V for hostile work environment sexual harassment in violation of the IHRA; Count VI for retaliation for reporting hostile work environment sexual harassment in violation of the IHRA, and Count VII for intentional infliction of emotional distress (Doc. 28). As further described above, the Court already found that there are material disputes of facts concerning Plaintiff's claims against Singleton. Further, Singleton and Plaintiff have not fully briefed the issues related to these specific claims. Therefore, based on the record presently before the Court, the Court cannot readily make any dispositive findings at this time, although Plaintiff's claims against Singleton raise many of the same issues which led to the dismissal of Plaintiff's claims against FedEx. However, the Court will not dismiss Plaintiff's claims against Singleton at this time.

## DISPOSITION

For the above-stated reasons, Defendant FedEx's motion for summary judgment (Doc. 86) is **GRANTED**.  The Clerk shall enter judgment in favor of Defendant FedEx, and against Plaintiff Wendy Brooks.    Plaintiff's claims against Defendant Singleton remain.

**SO ORDERED.**

Dated:  April 12, 2021

_____
DAVID W. DUGAN
United States District Judge